## AMY (A WOMAN OF COLOR.) v. JONATHAN RAMSEY.

1. A. by deed, purporting to be founded on a valuable consideration, conveyed four slaves to B., with a condition that the possession of the same should remain in A. until his death. After twenty years possession, A. emancipated them by deed duly acknowledged, &c., held, that however void the conveyance to B. might have been as against subsequent purchasers, or creditors, it is at least good against those claiming under the deed of emancipation; the latter being a voluntary act, and the grantees not being purchasers for valuable consideration.
2. It is not necessary to prove any consideration for the bill of sale, as against the claimants under the grantor.

Statement of the case made, and opinion delivered by McGIRK, Judge.

Amy, the plaintiff in error, brought an action of assault, &c., against Jonathan Ramsey in the circuit court of Callaway county for her freedom. The defendant plead that the plaintiff was his slave, issue was gained to this plea. The parties went to trial, and the defendant proved the plaintiff was born the slave of one Josiah Ramsey more than twenty years before the trial, in the State of Kentucky, and that she had continued in the possession of said Ramsey till the time of his death, which took place in September, 1834; that Josiah Ramsey moved from Kentucky to Missouri, and resided in the same since the year 1816 or 1817. The defendant then offered to give in evidence a bill of sale under the hand and seal of the said Josiah to the said Jonathan the defendant, bearing date the 27th day of August, 1807, expressing the consideration of thirteen hundred and twenty-three dollars, and conveying the plaintiff, and four others, to the said Jona-

than. The bill of sale reserved the use of the slaves to said Josiah for his life. The bill of sale purports to be witnessed by Thomas Patterson, who was proved to be dead. The defendant proved the hand-writing of Patterson, and also the hand-writing of Josiah Ramsey, and then offered to read the deed to the court sitting as a jury; to this the plaintiff objected, but the court overruled the objection; permitted the paper to be read, and the plaintiff excepted. On the back of the paper there was a certificate of one Patterson, certifying without official seal, that the deed had been acknowledged in open court in Livingston county, Kentucky, and was recorded. There was some other testimony as to the good character of Patterson, the witness, &c.

The plaintiff then gave in evidence, the deposition of one Saml. Lawrence, which went to prove that, in 1830, the defendant, Jonathan, told him that he had no claim to the plaintiff, and also informed witness that the old man could not dispose of the negroes as he had set them free in Kentucky. The plaintiff also proved that the bill of sale was not in the hand-writing of Josiah Ramsey. The plaintiff then proved by Jessee Patterson, the clerk in Kentucky, who states that, in 1832, he was made clerk; when he entered on the duties of the office he found the bill of sale among hundreds of old papers not recorded by his predecessor, and that he recorded it, and that there was no order in the record book of the acknowledgement, and that when the order was made, one Parmer was clerk, and one Davis deputy, and that the order was in the hand-writing of said Davis. The plaintiff then offered to prove by some witness who had examined the original order, that the word *sale* in the order, had not been originally written so, but had been rubbed out. The court refused to hear this evidence. The plaintiff then offered to give in evidence a deed of manumission, from Josiah Ramsey to her and others, duly proved, as the law directs, and recorded, &c., the date of which deed is the 3d day of September, 1834. The defendant objected to this deed being given in evidence, and the defendant stated, in open court, that if defendant did not prove, the plaintiff was his slave, then she was entitled to a verdict. The court rejected the deed. The defendant then gave in evidence a letter addressed to him by the witness, Lawrence, without a name, but proved to be Lawrence's writing, in which he stated the negroes had offered him $100 not to go away, but to give testimony for them; but that if Ramsey would give the $100, witness would go away, and not

give evidence. The defendant also proved by one Roy-ston, that Josiah had admitted in his presence in 1830 or thereabout, that the slaves belonged to defendant after his, Josiah's death; also proof was given of the good char-acter of Royston. There was some other evidence given to show that the subject of Josiah wishing to emancipate the slaves was mentioned to defendant, and that he said nothing about his claim.

The plaintiff then asked the court for several instruc-tions, some were given and some were not given. Those refused are as follows:

1st. That the bill of sale is void against the plaintiff.

2d. That if the jury, even if they believe the bill of sale was once made by Josiah Ramsey, yet if they believe the same was cancelled, they must find for the plaintiff.

3d. That if they find the bill of sale is more than 20 years old, and Josiah Ramsey has ever since, and before, its date, been in the absolute possession of the plaintiff as his slave, then they must find for the plaintiff.

4th. If they believe the said Josiah has had the adverse possession of the plaintiff for more than five years before he set her free, then they must find for the plaintiff.

5th. If they believe from the evidence that Jonathan Ramsey admitted at several times that he claimed no in-terest in the slaves, the same is evidence to show the bill of sale had been cancelled. There were several other in-structions refused, but it is believed all the balance are embraced in those already mentioned.

The defendant asked and obtained the following in-structions:

1st. If the jury believe from the evidence that the slave was Jonathan Ramsey's by the purchase, then she is still his, unless he has sold or disposed of his interest.

2d. There is no evidence of any sale or transfer of the slave by Jonathan.

3d. That the defendant not asserting his title is no ev-idence that he had none, or had released it.

4th. That if the jury find, on the death of Josiah Ram-sey, the defendant became entitled to the plaintiff as his slave, they must find a verdict for defendant.

5th. That the fact that defendant did not disclose his title to Joshua Ferguson, to William Scott, or to S. Lawrence, does not of itself divest him of it.

6th. That no inference is to be drawn in favor of plain-tiff from the character of the defendant, whether good or bad.

1st. It is assigned for error that the court refused the

above instructions asked by the plaintiff, and gave those asked by the defendant.

2d. It is assigned, for error, that the court refused a new trial, and

3d. Also the court erred in permitting the defendant's bill of sale to go in evidence.

4th. The court erred in refusing to permit the plaintiff to prove the order admitting the bill of sale to record in Kentucky had been altered and erased.

5th. That the court erred in refusing to permit the plaintiff to read in evidence her deed of emancipation.

These five points contain all the matter in value in the case.

*J. Wilson*, for plaintiff in error, insisted:

1st. That the court erred in permitting the bill of sale from Josiah Ramsey to Jonathan Ramsey to be read in evidence.

2d. That the court erred in refusing to permit the plaintiff to prove the order in Kentucky had been altered and erased.

3d. That the court erred in refusing to permit the plaintiff to give in evidence the deed of emancipation, the plaintiff and others.

4th. The court erred in giving the 1st, 3d, 5th, 10th, 14th and 15th instructions asked by defendant.

5th. The court erred in refusing a new trial.

*Leonard*, for defendant, relied upon the following points:

First point: The deed of August, 1807, together with the proof of its execution, was properly admitted as evidence.

Second point: The evidence offered by the plaintiff to prove erasures in the record of the Livingston county court was properly executed.

Third point: The deed of emancipation from Josiah Ramsey, senior, was irrelevant to the matter in issue between the parties, and rightly excluded.

Fourth point: The jury were correctly instructed as to the law of the case.

Opinion of the court, delivered by McGirk, Judge.

The first instruction calls on the court to say the bill of sale is void. The court did right to refuse this on the ground that the proposition involved the whole question in dispute, and there was not a state of evidence to justify the court to declare the law to be so.

MAY TERM
1837.

Amy v. Ramsey.

A., by deed, purporting to be founded on a valuable consideration, conveyed four slaves to B. with a condition that the possession of the same should remain in A. until his death. After twenty years possession, A. emancipated them by deed duly acknowledged, &c.––held that however void the conveyance to B. might have been as against subsequent purchasers, or creditors, it is at least good against those claiming under the deed of emancipation; the latter being a voluntary act, and the grantees not being purchasers for valuable consideration.

The second instruction asked, assumes the ground that if the bill of sale was cancelled, then the verdict must be for the plaintiff. Though the court refused to give this in terms, yet the court fully gave the substance of it in another asked by plaintiff.

The third instruction refused, assumes the ground that twenty years possession by Josiah after the date of the bill of sale to Jonathan, prevents the defendant from setting up title. This fact might have great weight in cases where creditors might be concerned,––that is subsequent creditors to the bill of sale: and also it might have weight where subsequent purchasers might be concerned, all for a valuable consideration, especially where the possession of the vendor is inconsistent with the terms of the sale. But, in this case, the possession of Ramsey, senior, was perfectly consistent with the title of Ramsey, junior. We do not mean to say, however, that this circumstance will save all deeds in such cases from being considered fraudulent, but only say it is some evidence of the fairness of the transaction. The fact that one man is the owner of property, and that another has the possession, for ten or twenty years, is calculated to deceive the public as to the ownership, and therefore the law looks on such cases with great jealousy. This plaintiff cannot, with any propriety, stand on the ground of a creditor, or a subsequent purchaser, for valuable consideration. There can, in law, be no valuable consideration in such a case; and if there could, yet there is no proof of any. We consider the deed of emancipation as entirely a voluntary deed, passing no more right to freedom than the donor had a right to slavery in the plaintiff. If Josiah had only a life estate in the slave, he could emancipate for life, and no more. The length of the possession of Josiah was consistent with his right. The defendant's right of enjoyment did not accrue till the life estate was determined. In our opinion there is no error on this point.

The fourth instruction refused, regards the adverse possession of the defendant. There is no foundation in the case to raise any question of adverse possession.

The fifth instruction refused, takes the ground that if Ramsey, the defendant, admitted several times that he had no claim to the slaves, it is evidence his pretended bill of sale was cancelled. We are of opinion the full substance of this instruction was given in other words quite as intelligible as in this arrangement of words, and that is enough. We do not see any reason to reverse the judgment for refusing any instruction asked by the plaintiff.

The next point is, did the court err in giving any of the instructions given for the defendant. The first instruction given, asserts that if the slave was the defendant's, by purchase, she is still his, unless he has sold or disposed of her. In reference to the case, this proposition is true; and although the instruction was not calculated to throw much light on the points of law in the case, yet it could not mislead the jury. There is no error on this point.

The second given affirms that there is no evidence that Jonathan Ramsey had sold the slave. Although the court might well have refused this, yet it is true in fact. Now, if there had been any evidence at all on this point, and the court had declared there was none, it would have been wrong. There is no error on this point.

The third instruction given, affirms that the fact that the defendant failed, or neglected, to assert his title, is no evidence he had none, or had released it. This instruction refers to certain testimony given regarding the fact that Josiah had manumitted the plaintiff. The defendant on being informed thereof, said nothing about his right; and when the defendant was asked by another witness why the old man was so anxious to set the slaves free, the defendant said, because Josiah had done an act long ago which he could not undo, but said nothing about his title. There may be cases in which the owner of property ought not to be silent in regard to his rights when the subject of those rights, or the title, is the subject of conversation; as when a person intending to purchase should tell the owner he intended purchasing the thing of another person. If, in this case, the owner should fail to disclose his title, it might, according to circumstances, amount to some evidence that the owner had no title, or had released it; or it might, in some cases, be strong evidence of fraud on a purchaser. But, in the case before us, no such cause existed; Ramsey's failure to disclose his title injured nobody, and deceived nobody. The circumstances did not require him, neither in justice nor propriety, to say one word about his title. We are clearly of opinion that his failure to disclose his title under the circumstances, is no evidence he had none. There is no error on this point.

The fourth instruction given in reference to the case in hand was not wrong, though of no importance.

The fifth asserts that the fact that the defendant did not disclose his title to certain witnesses, does not divest him of his right. This proposition is true in general, and particularly true in this case.

MAY TERM
1837.

Amy v. Ramsey.

The sixth is that whether the character of the defendant was good or bad, the jury could not make the character of the defendant any ground to found a verdict on. This proposition only asserts what the general law is, and we cannot see how the giving this instruction could injure the plaintiff. This disposes of all the instructions on both sides. As to the question of a new trial, we see no ground arising out of the evidence to interfere.

The third error assigned is, that the court did wrong in permitting the defendant's bill of sale to be read in evidence.

It is not necessary to prove any consideration for the bill of sale, as against the claimants under the grantor.

The ground on which this objection is based is, that the defendant was bound to show, by proof, the consideration of the bill of sale, and that unless he would do so, the deed is void against the plaintiff, and she is to be viewed in as favorable a light as purchaser for a valuable consideration.

We view this point in this way, that if a consideration were required to be shewn that the want of such proof would be no lawful reason why the deed hould nsot be read, but it would be a reason why the deed could not operate in law, and so the jury might be told. But, in this case the deed expresses a consideration, Josiah Ramsey and all claiming under him afterwards, are stopped to say there was no consideration, and this being a deed, imports a consideration. Now, the deed bears date more than twenty years before the plaintiff's supposed right accrued. The law holds the date corresponds with the truth, until the contrary appears; and in this case nothing appears to the contraxy. The donor of the plaintiff's liberty is bound by the date and the consideration contained in the deed, and so is the plaintiff—she can have no right other than such as Josiah could lawfully pass when he made the deed of emancipation.

Mr. Wilson has cited several cases to show that the recitals of consideration contained in a voluntary deed are no evidence against a stronger. If we admit these cases to be law, they cannot govern this case, because the plaintiff here is privy in estate to Josiah, and holds under him.

The next objection is, that the court refused to allow evidence to shew that the Kentucky memorandum of the acknowledgment was erased. In this we think the court did right: we cannot see any lawful object to be accomplished by such proof.

The next point is, that the court erred in refusing to have the plaintiff's deed of emancipation read in evidence.

It seems to us the defendant rests his whole case on the point that the plaintiff was his slave. The question was not that the plaintiff was not free in general, but that she was a slave, and belonged to him. This issue made it his duty to prove, in the first place, that the plaintiff was a slave born, and continued so, till his title accrued; and secondly, that he was the rightful owner at the time of bringing the action. In this way he took on himself the proof of slavery, which proof would have rested on the plaintiff if the defendant had pleaded the general issue. The plaintiff had nothing to prove till the defendant made out his case, then she could, and had, a right, to rebut the defendant's testimony.—But this deed was not relevant in that point of view. There was no error on this point. Judgment affirmed, the defendant pays his own costs.

*J. Wilson*, for plaintiff.